**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **DANA BRENTON SIMPSON,** | § | **Case No. 24-42912** |
| | § | |
| **Debtor.** | § | |

# CREDITOR KURT KNAPTON'S MOTION TO DISMISS BANKRUPTCY CASE WITH PREJUDICE TO REFILING FOR ONE HUNDRED TWENTY DAYS

## 14-DAY NEGATIVE NOTICE – LBR 1017(b):

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading *WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE* shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**TO THE HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Kurt Knapton ("Mr. Knapton"), a creditor of the Debtor in the above-referenced Chapter 11 bankruptcy case (the "Bankruptcy Case"), hereby files this *Motion to Dismiss Bankruptcy Case With Prejudice to Refiling for One Hundred Twenty Days* (the "Motion") pursuant to 11 U.S.C. § 1112. In support of the Motion, Mr. Knapton respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408, 1409.

2. The statutory bases for the relief sought are sections 105(a) and 1112(b) of the Bankruptcy Code and Rules 1017 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

3. As support for this Motion, attached hereto is an Appendix containing Exhibits A through M.[1]

## II. BACKGROUND

4. On December 2, 2024 (the "Petition Date"), Dana Brenton Simpson (the "Debtor") commenced the above-captioned bankruptcy case by filing a voluntary petition for relief under Chapter 11 (Subchapter V) of Title 11 of the United States Code ("Bankruptcy Code") solely to avoid a court-ordered sale of property.

5. Prepetition, the Debtor obtained money through fraud from Mr. Knapton and other investors through sham entities he created, including Click Vision Group ("CVG") and Acuity Advisors, LLC ("Acuity").

6. Mr. Knapton made his first investment in CVG for $100,000.00 on June 19, 2018. He made three further investments in CVG: one for $200,000.00 on August 13, 2018, another for $100,000.00 on October 24, 2018, and the last for $165,923.29 on December 16, 2019. Those investments were made in the form of four convertible term notes. Mr. Knapton's total investment in CVG was $565,923.29. The notes matured but were not repaid as required or upon demand.

[1] Due to its size, the Appendix containing supporting exhibits is being served by mail only on the Debtor. A complete copy of the Appendix may be obtained by making a request to undersigned counsel.

7. As a result, Mr. Knapton commenced an arbitration proceeding against the Debtor, Click Vision Group, LLC, and Acuity Advisors, LLC (collectively, the "Respondents") before the American Arbitration Association numbered 01-21-0002-2315. Knapton and Respondents later entered into an Agreed Arbitration Consent Award (the "Consent Award") in connection with a settlement agreement between the parties. The Consent Award was signed and entered on July 21, 2022. A true and correct copy of the settlement agreement with the Consent Award is attached hereto as "**Exhibit A.**" (Appx. 001-008).

8. Pursuant to the Consent Award, the Arbitrator ordered that Mr. Knapton should have and recover from Respondents, jointly and severally, actual damages in the amount of $850,000 for civil fraud and concerted-misconduct estoppel committed by the Respondents against Mr. Knapton, plus post-judgment interest at the rate of 5%, compounded annually, until all amounts are paid in full. Pursuant to Debtor's agreement, the Consent Award is nondischargeable.

9. On August 30, 2022, Mr. Knapton filed his *Application to Confirm Arbitration Award* in the 141st judicial district court of Tarrant County, Texas, Cause No. 141-335985-22 (the "State Court")[2].

10. On or about October 31, 2022, the Consent Award was confirmed and reduced to judgment through a Corrected Final Judgment (the "Final Judgment") entered against Respondents in the State Court. The Final Judgment was ultimately abstracted in Denton County. A true and correct copy of the Final Judgment is attached hereto as "**Exhibit B.**" (Appx. 009-010).

11. Respondents refused to pay the judgment. Mr. Knapton therefore conducted initial asset and judgment-collection discovery against Respondents. The Debtor committed misconduct and discovery abuse by failing to answer discovery, including by asserting frivolous objections to

[2] The case was ultimately transferred to the 48th judicial district court and assigned cause number 048-344226-23.

discovery, lying in interrogatory answers, producing fabricated documents, and failing to appear for his deposition twice. Despite the Debtor's discovery misconduct, Mr. Knapton ultimately learned through discovery that the Debtor through Acuity Advisors, one of the Respondents, fraudulently purchased a residence on May 18, 2022 in Denton County.[3] The residence is located at 2621 Huntly Lane, Flower Mound, Denton County, Texas (the "Property"). The Debtor was the alleged record owner of the Property. Mr. Knapton filed a lis pendens on the Property.

12. On May 30, 2024, the State Court entered an order enjoining the Debtor from transferring or further encumbering the Property.

13. On July 3, 2024, Mr. Knapton filed *Applicant's Motion for Declaratory Relief and for Turnover Relief* (the "Turnover Motion"), seeking a judgment that the Property is not Debtor's homestead and an order from the court requiring Debtor to turn over the Property for execution.

14. On September 9, 2024, Mr. Knapton filed *Applicant's Third Motion to Compel and Motion for Death-Penalty Sanctions against the Debtor* (the "Sanctions Motion").

15. On October 17, 2024, the State Court entered an order (the "Order") granting Mr. Knapton's Turnover Motion, finding that the Property is not the Debtor's exempt homestead and ordering the Debtor to turn over the Property to Denton County Constable for levy and execution sale under a writ of execution. The Order further found that the Debtor had "continued to engage in discovery abuse and ignore this Court's orders to properly answer discovery and pay reasonable expenses." A true and correct copy of the Order is attached hereto as "**Exhibit C.**" (Appx. 011-018). The Order is final and has not been appealed.

---

[3] Acuity Advisors, LLC filed a chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Texas on July 21, 2023, administered under case number 23-42106. Knapton and two of his affiliated entities, LRK-96, LLC and BEK-98, LLC, purchased all assets and claims of Acuity and its estate (including 100% ownership in Click Vision Group) from the Chapter 7 Trustee by sale order entered on February 13, 2024.

16. On October 28, 2024, the Tarrant County District Clerk issued a writ of execution for the court-ordered execution sale of the Property.

17. On November 8, 2024, the Denton County Constable, Precinct 4, levied on the Property.

18. On November 12, 2024, the Debtor filed a Motion to Reconsider the State Court Order. The Debtor did not file a notice of appeal or supersedeas bond.

19. On the evening of November 18, 2024, Mr. Knapton's State Court counsel learned that Debtor was attempting to sell the Property in violation of the State Court's prior orders.

20. On November 19, 2024, Mr. Knapton filed an Emergency Motion for Enforcement of Order Against the Debtor.

21. The Property was set to be sold pursuant to the Order on December 3, 2024.

22. On December 2, 2024, Debtor filed this Bankruptcy Case *pro se* as an eleventh-hour effort to prevent the rightful sale of the Property to Mr. Knapton to satisfy Mr. Knapton's judgment for fraud obtained against the Debtor.

23. On December 19, 2024, Mr. Knapton filed *Creditor Kurt Knapton's Motion for Relief from the Automatic Stay Against Debtor's Alleged Property Without Waiver of the 30-Day hearing Requirement* [Docket No. 17] (the "Lift Stay Motion"), seeking relief from the automatic stay to continue the State Court action and to exercise his execution rights on the Property to satisfy the Final Judgment. The Lift Stay Motion remains pending.

## III. RELIEF REQUESTED AND BASIS FOR RELIEF

### A. The Court Should Dismiss the Bankruptcy Case Because it was filed in Bad Faith.

24. Section 1112(b) governs when a bankruptcy court must dismiss a Chapter 11 case or convert such a case to Chapter 7. Under section 1112(b)(1), if cause exists to convert a case to

chapter 7 or to dismiss a case, the Court is required to convert or dismiss the case – "whichever is in the best interests of creditors and the estate."[4] Section 1112(b)(4) then provides a list of examples of "cause." The list in section 1112(b)(4) is not exhaustive and courts may find "cause" for other equitable reasons. *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re: Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (inclusion of the phrase "for cause" in Section 1112(b) is "not defined in the statute so as to afford flexibility to the bankruptcy courts."); *In re 1701 Commerce, LLC*, 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012) (courts in the Fifth Circuit and other circuits "have long recognized that bad faith constitutes cause for purposes of dismissal under section 1112(b).").

25. "Bad-faith conduct can include prepetition bad-faith conduct, post-petition bad faith conduct, or petitions that serve no legitimate bankruptcy purpose." *In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 865 (Bankr. S.D. Tex. 2023).

26. To determine whether a case has been filed in bad faith, courts must examine the totality of the circumstances. *Id.* Courts have identified a number of factors indicative of a bad faith filing, including:

> (1) the debtor has one asset, such as either undeveloped or developed real property, encumbered by secured creditors' liens,
>
> (2) debtor has engaged in improper pre-petition conduct,
>
> (3) the debtor's property has been posted for foreclosure, and the debtor has tried unsuccessfully to prevent this foreclosure in state court,
>
> (4) the filing of bankruptcy enabled the debtor to evade court orders,

[4] Because this case was filed under Subchapter V, section 1112(b)(1)'s exception allowing for the appointment of a trustee or an examiner under § 1104 is inapplicable. *See* 11 U.S.C. § 1181(a) (stating that section 1104 does not apply in a case filed under Subchapter V).

(5) the debtor employs few or zero employees other than its principals,

(6) there is little or no cash flow or source of income to sustain a reorganization, and

(7) there are few if any unsecured creditors and their claims are relatively small.

*In re 1701 Commerce, LLC*, 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012) (citing *Little Creek*, 779 F.2d at 1072-73).

27. The totality of the circumstances in this case supports a bad faith finding against the Debtor.

**i. *The Debtor engaged in improper pre-petition conduct.***

28. The Debtor has engaged in fraudulent and improper conduct for years. Both CVG and Acuity were sham entities created by the Debtor to bilk investors, including Mr. Knapton, out of millions of dollars. After the Debtor refused to repay Mr. Knapton on the convertible notes, Mr. Knapton engaged forensic accounting firm Dawson Forensic Group ("DFG") to investigate CVG. Mr. Knapton also commenced the Arbitration Proceeding against the Debtor, CVG, and Acuity, ultimately obtaining the Consent Award. The Consent Award found that Debtor committed "civil fraud and concerted-misconduct estoppel" against Mr. Knapton and awarded Mr. Knapton $850,000 in actual damages against the Debtor, CVG, and Acuity. After the Debtor refused to pay the Final Judgment confirming the Consent Award, Mr. Knapton engaged in post-judgment discovery and collection actions against the Debtor in the State Court.

29. A list of the Debtor's fraudulent conduct includes (but is certainly not limited to):

a. DFG's report demonstrates that the Debtor successfully elicited millions of dollars from dozens of investors by creating an elaborate illusion of CVG's financial success using inflated claims and fictitious documentation, including but not limited to falsified corporate financial statements, falsified and doctored bank

statements, falsified bank account activity, falsified or manipulated contracts, phony customer contact information, phony names of CPA firms allegedly performing services for CVG, fabricated customer order information, and fabricated customer e-commerce click-through documentation. (Appx. 019-137, Exhibit D).

b. The DFG report also demonstrates that the Debtor benefitted personally by using investor funds for unauthorized and improper purposes and by conveying those funds from CVG to Acuity Advisors LLC—a new entity that Simpson created in November 2019 under his sole control and ownership. (Appx. 019-137, Exhibit D).

c. The actual bank statements do not match the fraudulent bank statements that the Debtor provided to deceive investors, including Mr. Knapton, regarding true cash balances and company expenditures during due diligence investigations. (Appx. 154-182; Exhibit F). Simpson provided these false and doctored bank statements to Mr. Knapton and other investors, passing them off as authentic. (Appx. 154-182; Exhibit F).

d. The actual bank statements do not match fraudulent and inaccurate federal income tax statements that the Debtor prepared and provided to Mr. Knapton and other investors during due diligence investigations. (Appx. 183-244; Exhibit G);

e. The true bank statements of CVG, Acuity, and Simpson reveal a clear picture of the massive extent that the Debtor helped himself to Mr. Knapton's and other investors' money totaling over $1.8 million over five years. (Appx. 138-153; Exhibit E).

f. In the underlying arbitration proceeding, the Debtor, CVG and Acuity filed a response to Mr. Knapton's motion for summary judgment that included an Exhibit 4. (Appx. 245-49, 253-55; Exhibits H, J). Exhibit 4 consists of a transmittal letter, a copy of a purported Chase cashier's check payable to Mr. Knapton in the amount of $355,000.00, and a purported UPS shipping receipt for delivery to Mr. Knapton dated December 9, 2020. (Appx. 245-49; Exhibit H). These three documents are fabricated. Mr. Knapton never received the purported transmittal letter and cashier's check. In the underlying arbitration proceeding, Mr. Knapton obtained the actual Chase cashier's check by subpoena. (Appx. 250-52; Exhibit I). The copy of the cashier's check in Debtor's Exhibit 4 was digitally doctored—likely by the Debtor—to change the remitter, the payee, the date, the dollar amounts, and the memo line. *See id.* Mr. Knapton learned that the UPS shipping receipt was also digitally doctored—likely by the Debtor—to change the date, the recipient and delivery address, and the shipment method. (Appx. 247-249; Exhibit H).

g. Mr. Knapton's analysis of the entire scope of CVG's, Simpson's, and Acuity Advisors' bank records shows that the amount of investor money that Simpson misappropriated or used for his own benefit totals at least $1,851,232.00 dollars across 539 separate transactions. (Appx. 138-153; Exhibit E).

**ii. *The Debtor's only substantial asset is one piece of real property that is fully encumbered which was purchased using fraudulent funds.***

30. As the walls were closing in on the Debtor in the arbitration proceeding commenced by Mr. Knapton, on May 18, 2022 the Debtor purchased the real property located at 2621 Huntly Lane, Flower Mound, Denton County, Texas for $1 million. During post-judgment discovery in the State Court litigation, the Debtor swore in interrogatory answers that the funds used to purchase

the residence came from Metropolitan Life Insurance Company ("MetLife") insurance proceeds pertaining to life insurance on Debtor's father. (Appx. 277, 283-285; Exhibit K). But Mr. Knapton later learned that this response was false and the Debtor fabricated documents to support this fraud. Mr. Knapton obtained documents through subpoena from MetLife and the title company, National Title Group, which show that the $985,500.12 funds used to purchase the property came by wire from Acuity, not MetLife. (Appx. 288-555; Exhibit M). MetLife's response to Mr. Knapton's subpoena stated that MetLife was unable to locate any life insurance policy in favor of the Debtor and could not find any documents concerning any life insurance proceeds being paid to National Title Group. (Appx. 286-87; Exhibit L).

31. As a result of Debtor's fraud, the State Court Order determined that this Property is not Debtor's homestead and should be sold to satisfy Mr. Knapton's judgment for fraud against the Debtor pursuant to Mr. Knapton's writ of execution.[5] According to the Debtor's Schedules, the Debtor has no other property other than a used Nissan Murano and *de minimis* personal property.

**iii.** ***The Debtor's Property was set to be sold by public auction.***

32. The Property was set to be sold by public auction on December 3, 2024 pursuant to Mr. Knapton's writ of execution. The Debtor filed the Bankruptcy Case the day before the public auction on the Property was set to occur.

**iv.** ***The filing of the Bankruptcy Case has enabled the Debtor to evade court orders.***

33. The filing of this Bankruptcy Case has enabled the Debtor to evade the orders entered by the State Court, including the Order which provided for the sale of the Property to satisfy Mr. Knapton's turnover and execution rights on the Property.

[5] *See* Appx. 012, Exhibit C.

***v. The Debtor is not engaged in any commercial or business activities.***

34. The Debtor is an individual who is not engaged in any commercial or business activities. The Debtor's Schedules state that Debtor's employment is with TAG Synaptic as Chief Management Officer. Mr. Knapton has reason to believe that Debtor's alleged employment with TAG Synaptic is either fictitious at worst or misleading at best. Also, Debtor's Schedules and Statements show no income from operating a business as of the Petition Date and no current ownership or control interest in any business.

**vi.** ***The Debtor has little or no cash flow to sustain a reorganization*.**

35. The Debtor has no means to sustain a reorganization. According to the Debtor's Schedules, the Debtor only has funds in the amount of $1,198.00 held in a Wells Fargo checking account. The Debtor's alleged sole source of income is from his alleged employment at TAG Synaptic, which the Debtor alleges provides him with $12,500 in monthly gross income. According to the Debtor's Schedules, most of this monthly income is otherwise committed for routine monthly expenses, leaving minimal funds available to fund a reorganization and payments to creditors.

**vii.** ***There are few unsecured creditors with relatively minimal claims*.**

36. The Debtor scheduled only three (3) unsecured creditors[6]: two judgment creditors each holding a joint and several claim in the amount of $180,000 against the Debtor, and Capital One for credit card debt in the amount of $2,200.

37. The facts shown above demonstrate that the Debtor filed this case in bad faith. All of the factors used by courts in this circuit support this bad faith finding. The Debtor has engaged in improper and fraudulent conduct for many years. After years of delays and improper conduct

[6] The Debtor incorrectly scheduled Mr. Knapton's claim as unsecured. Mr. Knapton's claim is secured by an abstract of judgment filed in Denton County, which includes the Property.

before the State Court, the State Court finally entered the State Court Order determining that the Property the Debtor obtained through fraudulent funds is not Debtor's homestead and should be sold to satisfy Mr. Knapton's Final Judgment. The Debtor filed this case for an improper purpose to evade the enforcement of this Order with no hope of reorganizing. The Debtor has no money, no equity in the Property, and is not engaged in any business or commercial activity. There are few other creditors and no other property to administer for the benefit of creditors. The Court should dismiss this case.

**B. The Court Should Dismiss the Bankruptcy Case Because the *Rooker-Feldman* Doctrine Prohibits this Court from Adjudicating Rights in the Property.**

38. The Court should dismiss the Bankruptcy Case to allow the State Court to adjudicate the parties' rights as to the Property. As of the Petition Date, the State Court's October 17, 2024 findings that the Property is not Debtor's homestead and should be sold by writ of execution are valid and have not been appealed. The Debtor has not obtained a stay of enforcement of the Order in the State Court. The *Rooker-Feldman* doctrine prohibits the Debtor from collaterally attacking the findings in the State Court Order in this Court.

39. Section 522(b) of the Bankruptcy Code grants debtors certain property exemptions from the bankruptcy estate. *See* 11 U.S.C. § 522(b). The property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 51 of Article XVI of the Texas Constitution and Section 41.002 of the Texas Property Code define the homestead exemptions in Texas. Tex. Const. art. XVI. § 51; Tex. Prop. Code Ann. § 41.002. "Under Texas law, courts of general jurisdiction, such as state trial courts, may determine if a property is a homestead." *In re Morris*, Civil Action No. 4:14-CV-1427, 2015 U.S. Dist. LEXIS 185000, at *19 (S.D. Tex. 2015).

40. "The *Rooker-Feldman* doctrine denies jurisdiction to the federal district courts to entertain collateral attacks on state court judgements." *Id.* (citing *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011)). A federal court has no authority to review final judgments of a state court in judicial proceedings. *See id.* This includes a state court's finding that property is not a debtor's homestead. *See McDaniel v. Camp (In re Camp)*, 59 F.3d 548, 555 (5th Cir. 1995) (holding that a sanctions order and order of sale finding that a debtor's property was not a debtor's exempt homestead under Texas law was a valid judgment subject to *res judicata* effect, and *Rooker-Feldman* doctrine barred the debtor from relitigating the matter and claiming a homestead exemption in bankruptcy court).

41. In this case, the State Court has already determined in a final order that the Property is not Debtor's homestead and the Property should be sold pursuant to a writ of execution. Under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to entertain a collateral attack on these findings. Because the Property is the Debtor's sole substantial asset which has already been determined not to be Debtor's homestead and in which the Debtor has no equity, the Bankruptcy Case is futile and should be dismissed so the matters concerning the Property can be resolved in State Court.

**C. The Debtor Has Failed to Satisfy Timely Filing and Reporting Requirements Mandated by the Bankruptcy Code**.

42. Additional grounds for dismissal exist because the Debtor has failed to satisfy timely certain filing and reporting requirements established by the Bankruptcy Code.

43. Section 1112(b)(4)(F) provides that an unexcused failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code constitutes "cause" for dismissal. 11 U.S.C. § 1112(b)(4)(F).

44. The Debtor has failed to comply with all filing and reporting requirements mandated by the Bankruptcy Code. Specifically, the Debtor has failed to append to the voluntary petition the documents required by section 1116(1) of the Bankruptcy Code. The Debtor also has failed to file all payment advices for the sixty (60) day period preceding the Petition Date as required by section 521(a)(1)(B)(iv). Because the Debtor has failed to comply with these mandatory requirements, the case should be dismissed.

**D. Dismissal, not Conversion, is in the Best Interests of Creditors and the Estate**.

45. Dismissal of this case is in the best interest of creditors and the bankruptcy estate. Mr. Knapton has pending litigation against the Debtor outside of bankruptcy and the State Court is the most logical place to adjudicate the rights in the Property. Furthermore, a conversion would be futile because the Debtor has no equity in the Property to benefit the estate. In light of these reasons, dismissal is in the best interest of creditors and the estate so that the State Court can resolve the issues concerning the Property.

46. Further, because of the Debtor's egregious conduct and his willingness to abuse the court system, the dismissal of this case should be made with prejudice to refiling any bankruptcy case for a period of one hundred twenty (120) days.

**PRAYER**

Mr. Knapton respectfully requests that the Court enter an order (i) granting this Motion; (ii) dismissing the Debtor's Bankruptcy Case with prejudice to refiling for one hundred twenty (120) days; and (iii) granting Mr. Knapton such other and further relief to which he may be entitled.

Dated: January 7, 2025

Respectfully submitted,

*/s/ H. Brandon Jones*
H. Brandon Jones
State Bar I.D. No. 24060043
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6914 telephone
Email: brandon@bondsellis.com
Email: bryan.assink@bondsellis.com

ATTORNEYS FOR CREDITOR KURT KNAPTON

## CERTIFICATE OF SERVICE

I hereby certify that, on January 7, 2025, a true and correct copy of the foregoing document[7] was served by the Court's CM/ECF system, or otherwise by first class mail, postage prepaid, upon each of the parties listed on the attached master mailing matrix, which includes the Debtor, the Subchapter V Trustee, the Office of the U.S. Trustee, known secured creditors, the twenty (20) largest unsecured creditors, all applicable governmental units, and all parties who have filed a notice of appearance or request for notice in this case.

The Motion and Appendix is being served by first class mail, postage prepaid, on the Debtor as set forth below.

Dana Brenton Simpson
2621 Huntly Lane
Flower Mound, Texas 75022

*/s/ Bryan C. Assink*
Bryan C. Assink

[7] Due to its size, the Appendix containing supporting exhibits is being served by mail only on the Debtor. A complete copy of the Appendix may be obtained by making a request to undersigned counsel.